|  |  |  |
|---|---|---|
| MICHAEL RAFFERTY, individually and as father and next friend of K.R., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-40114-FDS |
| MASSACHUSETTS DEPARTMENT OF CHILDREN AND FAMILIES; ANGELO MCCLAIN, as Commissioner of Department of Children and Families; KRISTIN PARADIS; ANNA MAE EHMANN; NOEMI MENDEZ; DONNA JERSYK-HOLLIS; VALERIE OVELACE GRAHAM; and JOHN DOES 1-5, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

This case arises out of alleged constitutional violations by employees at a Massachusetts state agency. Plaintiff Michael Rafferty contends that employees at the Massachusetts Department of Children and Families ("DCF") intentionally falsified a report that Rafferty had sexually abused his son K.R., affecting his visitation rights. He asserts claims, individually and as the father and next friend of K.R., for violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; for violations of Articles 1 and 10 of the Massachusetts Civil Rights Act ("MCRA"), pursuant to Mass. Gen. Laws ch. 12 § 11I; for negligence pursuant to the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258; and for abuse of process. This Court

has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a).

Defendants DCF and McClain moved to dismiss on October 1, 2010, while the remaining defendants moved separately to dismiss on the same day. For the reasons stated below, the motions will be granted.

I. **Background**

The complaint contains the following factual allegations.

Plaintiff Michael Rafferty is the father of K.R., an eight-year-old boy. At the time of the events at issue in this case, K.R. lived with his mother and maternal grandparents and saw his father on weekends and Wednesday evenings, under a visitation schedule adopted after the parents' divorce.

On June 19, 2007, when K.R. was four, Rafferty filed a report with defendant DCF under Mass. Gen. Laws ch. 119, § 51A.[1] The report alleged that K.R. had witnessed domestic violence between his maternal grandparents. Kristin Paradis was assigned to investigate the allegations pursuant to Mass. Gen. Laws ch. 119, § 51B.[2]

Over the next several days, Paradis interviewed Rafferty, K.R., Renee Marion (K.R.'s mother), and Carol Marion (his maternal grandmother). Cross-accusations of abuse emerged. Rafferty continued to assert that the Marions fought in the home and also alleged that they

---

[1] Section 51A provides that "any . . . person may make . . . a report [to DCF] if any such person has reasonable cause to believe that a child is suffering from or has died as a result of . . . abuse or neglect." Mass. Gen. Laws ch. 119, § 51A (2007).

[2] Section 51B provides that DCF "shall . . . investigate and evaluate the information reported under section fifty-one A. . . . The investigation shall include a home visit at which the child is viewed, if appropriate, a determination of the nature, extent and cause or causes of the injuries, the identity of the person or persons responsible therefor, the name, age and condition of other children in the same household, an evaluation of the parents and the home environment, and all other pertinent facts or matters." Mass. Gen. Laws ch. 119, § 51B (2007).

2

coached K.R. to make accusations against him. The Marions alleged that Rafferty had sexually abused K.R.[3]

Paradis asked K.R. about these accusations during her interview with him in the Marions' home. While Carol Marion waited in the next room, the boy told Paradis that his father had taught him how to kiss with his tongue and kissed him that way.

Rafferty denied this in a subsequent telephone conversation. On July 2, 2007, Paradis decided to "unsupport" the allegations.[4] She stated in her report that "[t]his is a case of he said she said and this worker had a very difficult time distinguishing the truth between the parties." (Def. Mot. Ex. 2 at 9) (*see* Compl. ¶ 26). In a letter to Rafferty, Paradis stated that DCF had determined that there was no reasonable cause to believe that K.R. had been subjected to any abuse or neglect.

Nevertheless, Paradis and her supervisor, Anna Mae Ehmann, decided that DCF would file a § 51A report against Rafferty based on K.R.'s statement that his father had taught him how to kiss with his tongue. Defendant Doe 1 filed this report on the same day, July 2, and it was

---

[3] Paradis also discovered a 2006 report in the DCF system that had been filed by Carol Marion against Rafferty for alleged sexual abuse. DCF had determined that the report was unfounded.

[4] According to DCF regulations,

> After completion of its 51B investigation, the Department shall make a determination as to whether the allegations in the report received are 'supported' or 'unsupported'. . . . To support a report means that the Department has reasonable cause to believe that an incident (reported or discovered during the investigation) of abuse or neglect by a caretaker did occur. To support a report . . . simply means that there is reasonable cause to believe that some caretaker did inflict abuse or neglect upon the child in question. "Reasonable Cause to believe" means a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child has been abused or neglected.

110 C.M.R.§ 4.32(1), (2).

assigned to a new case worker for a § 51B investigation. The next day, however, defendant Doe 2 reassigned the case to Paradis, in violation of DCF regulations.[5] After receiving the case, Paradis called the Marions and suggested they contact their attorney regarding Rafferty's visitation rights and that they "seek a SAIN interview through the assessment worker." (Def. Mot. Ex. 1 at 2).[6] She then copied her notes from the previous § 51B investigation and "supported" the allegation of sexual abuse after only two hours with the case.[7] Paradis did not inform Rafferty of this new investigation, nor did she conduct any follow-up interviews.[8]

Paradis then determined that the local district attorney and law enforcement should be

---

[5] The relevant regulation, 110 C.M.R. § 4.30, provides that "[i]n the event that a second or subsequent report is received and screened in on an open case or any case which has been closed during the previous twelve months, the Department shall not assign such report for investigation to any social worker who has had any previous responsibility for the case . . . ."

[6] A Sexual Abuse Investigation Network ("SAIN") interview occurs after DCF has determined that a § 51A allegation is "supported."

[7] The second § 51B report contains a number of time-stamped entries. The first entry of copied material was placed in the report at 3:04 p.m. on July 3, 2007, and states that the "[i]nvestigation visit [was] held on June 27th, 2007." (Def. Mot. Ex. 1 at 2) (*see* Compl. ¶ 33). The two following entries (entered within five minutes of the first) also contain copied statements but do not state when the interviews were actually conducted. (Def. Mot. Ex. 1 at 3-4). The complaint alleges that these last two interviews were "fabricated . . . as occurring . . . on July 3, 2007." (Compl. ¶¶ 34-35).

[8] DCF regulations provide the following procedure for a 51B investigation:

(2)    The investigation shall include . . . . making any collateral contacts necessary to obtain reliable information . . . . Parents and other individuals living in the home are visited a minimum of one time, [and] the initial visit occurs in the home within three working days after the screening decision. Any parent or parent substitute living out of the home, who can be located, is contacted a minimum of one time. The nature of the contact is determined by the investigator and supervisor.

(5)    At the time of the first contact with parent(s) or caretaker(s), the investigator shall deliver to said individual a statement of rights which shall include written notice that a 51A report has been made, the nature and possible effects of the investigation, and that information given could and might be used in subsequent court hearings. Such notice shall be in a form prescribed by the Department.

110 C.M.R. § 4.27.

informed of the decision, and defendant Doe 3 mailed copies of the second § 51A and § 51B reports to them.[9] She also determined that Rafferty's name should be listed in the DCF's Registry of Alleged Perpetrators.[10] Ehmann collaborated in and approved each of these steps.

Following its normal practice, DCF assigned Noemi Mendez to conduct a follow-up assessment of the family's need for services in light of the supported allegations. Mendez had access to all of the § 51A and § 51B reports associated with the case. Mendez never informed Rafferty of his right to submit new information to her and refused to accept any information regarding the allegation of sexual abuse.[11] Several months later, Mendez recommended that DCF close the case.

On July 5, Renee Marion obtained an *ex parte* order in Worcester Probate Court suspending Rafferty's visitation rights. The court issued the order after contacting DCF and learning from defendant Doe 4 that the allegation of sexual abuse had been supported. Rafferty was not allowed to visit his son until October 8, and the Probate Court required these visits to be

---

[9] DCF regulations provide that "[i]f, after an investigation pursuant to M.G.L. c. 119, § 51B, the Department supports a 51A report, the Area Director shall . . . mail or deliver a copy of the completed 51A report and a copy of the completed 51B investigation to the District Attorney and the local law enforcement authorities . . . if . . . a child has been sexually assaulted." 110 C.M.R. § 4.51.

[10] DCF regulations provide that"[t]he name of the alleged perpetrator shall be added to the Registry of Alleged Perpetrators if . . . the allegation of child abuse or neglect has been supported and referred to the District Attorney . . . and . . . there is substantial evidence indicating that the alleged perpetrator was responsible for the abuse or neglect. . . . [S]ubstantial evidence is defined as 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" 110 C.M.R. § 4.37. The Registry is accessible only for limited purposes, including screening applicants for adoption and conducting 51B investigations. 110 C.M.R. § 4.38. It not generally accessible to the public. *Id.*

[11] DCF regulations provide that "[i]n cases which were opened as a result of a supported investigation, under Mass. Gen. Laws ch. 119, § 51B, the social worker informs the family that they may submit information to her/him regarding the investigation decision which will be reviewed . . . ." 110 C.M.R. § 5.04.

5

supervised.[12]

Rafferty first learned of the second § 51A report and DCF's "support" decision by letter on July 5. He subsequently requested review of the decisions to support the allegation and to list him on the Registry of Alleged Perpetrators. He appealed directly to Donna Jersyk-Hollis, who is apparently the supervisor of Ehmann and Paradis, pointing out various statutory and regulatory violations in Paradis's investigation. Jersyk-Hollis upheld the decisions. Rafferty also appealed to an impartial reviewer through the DCF's "Fair Hearing" process. *See* 110 C.M.R. §§ 10.01-10.36. That reviewer, Valerie Lovelace Graham, reversed the decisions because Paradis's assignment to the second § 51B investigation violated 110 C.M.R. § 4.30. She also directed defendant Doe 5 to file a third § 51A report alleging that Rafferty sexually abused K.R.

In November 2007, a new case worker conducted a third § 51B investigation. He concluded that there was no reasonable cause to believe the allegations of sexual abuse and "unsupported" the third § 51A report.

After six months of restrictions or prohibitions on visitation, Rafferty and K.R. resumed regular, unsupervised visitation on January 20, 2008.

The present action was filed on June 24, 2010. Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II. Standard of Review

On a motion to dismiss under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175

---

[12] Rafferty was also required to pay part of the supervisor's fees for each visit.

F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. <u>Analysis</u>

Defendants have filed two motions to dismiss. The first addresses the claims against DCF and its Commissioner, while the second addresses the claims against the remaining defendants. Before proceeding to the merits, however, the Court must first address whether it can properly consider the reports submitted by defendants along with their motions to dismiss.

### A. <u>Considering Defendants' Additional Evidence</u>

Defendants include the first two § 51B investigations in support of their motions to dismiss. (*See* Def. Mot. Exs. 1-2). Under Fed. R. Civ. P. 12(b)(6), the district court may normally consider only facts and documents that are part of or incorporated into the complaint. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). If "matters outside the pleadings are presented to and not excluded by the court, the motion must [normally] be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "it is

well-established that in reviewing the complaint, [the Court] may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." *Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (internal quotations omitted); *see Trans-Spec*, 524 F.3d at 321 (citing *Clorox*).

The complaint refers repeatedly to the contents of both reports. (*See, e.g.*, Compl. ¶¶ 20, 22-27, 31-36). The Court therefore deems them integral to assessing the sufficiency of allegations in the complaint, and will consider them in evaluating the motion to dismiss under Rule 12(b)(6) without converting the motion into one for summary judgment.

### B. The Motions to Dismiss

Plaintiff contests the motions to dismiss only as to the § 1983 claims and MCRA claims against the individual defendants.[13] For reasons given below, the motion to dismiss will be granted.

#### 1. The Federal Constitutional Claims

Plaintiff's federal claims under 42 U.S.C § 1983 boil down to violations of the substantive and procedural due process clauses of the Fourteenth Amendment.[14] The Fourteenth Amendment

---

[13] Because plaintiff has dropped his claims against DCF and McClain, their motion to dismiss will be granted. Plaintiff has also dropped his claims of abuse of process, and accordingly the remaining motion to dismiss will granted as to those claims.

[14] The complaint also alleges violations of the Fourth and Fifth Amendments. However, plaintiff has failed to explicate these claims in the complaint or to defend them in his opposition to the motion to dismiss. Mere mention of a possible cause of action is not enough to sustain it, and the claims based on the Fourth and Fifth Amendments will therefore be dismissed. *See Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why . . ."); *Pease v. Burns*, 719 F. Supp. 2d 143, 150-51 (D. Mass. 2010) (dismissing claims in similar circumstances).

8

provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. This clause guarantees both "fair process" and "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). To succeed under a claim of either procedural or substantive due process, a plaintiff must first show that he has been deprived of an interest protected by the Fourteenth Amendment. *See Kauch v. Dep't for Children, Youth, & Their Families*, 321 F.3d 1, 4 (1st Cir. 2003); *Pease v. Burns*, 719 F. Supp. 2d 143, 151 (D. Mass. 2010).

Plaintiff contends that the individual defendants violated his substantive due process right to be free from government intrusion into his family life, and asserts that defendants Ehmann, Jersyk-Hollis, and Graham deprived him of his right to procedural due process. Defendants reply that they are entitled to absolute immunity for the decision to support the allegations of abuse and to qualified immunity for any other actions. Because the Court finds that qualified immunity applies, it does not reach the issue of absolute immunity.

Qualified immunity provides a "safe harbor" for public officials performing discretionary functions. *Kauch*, 321 F.3d at 4.[15] It is not a legal defense, *per se*, but rather "an entitlement not to . . . face the . . . burdens of litigation" in the first instance. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009)). It should therefore be considered and resolved prior to discovery if possible, and in any event at the earliest possible stage in the litigation. *Pearson*, 129 S. Ct. at 815.

---

[15] It is well-established that social workers such as defendants are performing functions "that [are] inherently governmental in nature" and such defendants are therefore entitled to assert the defense of qualified immunity. *Id.* at 4; *Frazier v. Bailey*, 937 F.2d 920, 929 n. 10 (1st Cir. 1992).

To determine whether defendants have qualified immunity, "[a] court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (internal quotations omitted). "The answer to each inquiry must be positive to overcome a defense of qualified immunity." *Kauch*, 321 F.3d at 4. District courts have discretion to consider these prongs in whatever order makes the most sense "in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818; *accord Maldonado*, 568 F.3d at 269.

The Court begins with the first prong. The constitutional right asserted in the complaint is the right to "freedom from unwanted intrusion into [Rafferty and K.R.'s] familial relationship." (Compl. ¶¶ 56, 60). It is well-established that the Due Process Clause protects a parent's interest in the care, custody, and control of his child. *Hatch v. Dep't for Children, Youth & Families*, 274 F.3d 12, 20 (1st Cir. 2001); *see Troxel*, 530 U.S. at 65 ("[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court."). However, that right is not without limits. In particular, it must be balanced against the best interests of the child and the state's interest in the health, education, and welfare of children. *Hatch*, 274 F.3d at 21; *Frazier*, 957 F.2d at 929-30; *see also Care and Protection of Robert*, 408 Mass. 52, 997-998 (1990) (recognizing the same competing interests under state law). Thus, the state may investigate allegations of child abuse. *See Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993) ("The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations."). It may also take protective measures where abuse is reasonably suspected. *See Hatch*, 274 F.3d at 21 ("[W]here a state

official has a reasonable basis to suspect abuse, the interest of the child [as shared by the state] in being removed from that home setting to a safe . . . environment outweighs the parents' private interest in familial integrity as a matter of law.").[16]

According to plaintiff, the "gravamen of the Complaint . . . [is that] after collaborating with Ehmann to file a Second 51A report without reasonable cause, Paradis supported the Second 51A report without conducting an investigation, but by falsifying one, and that the other Defendants, including Does 1-4, collaborated in, approved, furthered, or acquiesced in this conduct, which harmed Rafferty and K.R." (Pl. Opp'n at 8). The complaint thus alleges that Paradis "supported" allegations of sexual abuse without any reasonable suspicion that plaintiff had in fact committed such abuse.

In the absence of reasonable suspicion of abuse, the right to familial integrity is "inviolate." *Hatch*, 274 F.3d at 22. The decision to "support" an allegation of sexual abuse would therefore violate substantive due process if there was no objectively reasonable basis to suspect abuse. *See Howard v. Malac*, 270 F. Supp. 2d 132, 140 (D. Mass. 2003) (child abuse report based on fabricated information violated substantive due process).

Reasonable suspicion "must be judged according to objective criteria; it is not dependent on . . . subjective motives." *United States v. Ruidiaz*, 529 F.3d 25, 29 (1st Cir. 2008) (defining reasonable suspicion in police context); *see Hatch*, 274 F.3d at 25 (adopting same "reasonable suspicion" standard for allegations of child abuse). Instead, "[r]easonable suspicion is dependent

---

[16] K.R., of course, has a corresponding liberty interest in enjoying the care and custodial relationship of his parents. *Suboh v. Dist. Attorney's Office of Suffolk*, 298 F.3d 81, 91 (1st Cir. 2002). Much the like the equivalent interest of the parent, however, this right is superseded by a child's absolute interest in being free from abusive behavior. *Hatch*, 274 F.3d at 21; *see Care and Protection of Robert*, 408 Mass. at 62. Accordingly, and for present purposes, a determination that there was no violation of Rafferty's right concerning his child means that there was no violation of K.R.'s corresponding right concerning his parent.

upon both the content of information possessed . . . and its degree of reliability. Both factors—quantity and quality—are considered in the totality of the circumstances . . . that must be taken into account when evaluating whether there is reasonable suspicion." *Hatch*, 274 F.3d at 25 (*quoting Alabama v. White*, 496 U.S. 325, 330 (1990)). The threshold for establishing reasonable suspicion is relatively low. *See Ruidiaz*, 529 F.3d at 29 ("reasonable suspicion requires more than a mere hunch but less than probable cause"). It is intended to allow "support" findings even when the evidence is sparse. *See Hatch*, 274 F.3d at 22 ("When presented with evidence of apparent child abuse, a case worker must have a fair amount of leeway to act in the interest of an imperilled child—and it is better to err on the side of caution than to do nothing and await incontrovertible proof.").[17]

Here, there was ample evidence to support a reasonable suspicion of abuse. K.R. told Paradis that plaintiff had taught him to kiss with his tongue, and kissed him that way. The same story was corroborated by K.R.'s mother and maternal grandparents. And plaintiff changed his own story from a flat denial of any knowledge about the sexual abuse allegations to a statement that K.R. told him he had learned how to kiss with his tongue from his mother. (Def. Mot. Ex. 1 at 5-6). Importantly, the complaint does *not* allege that Paradis invented these statements. This information was therefore enough to establish reasonable suspicion of abuse, regardless of the defendants' alleged subjective motives. *Cf. Howard v. Malac*, 270 F. Supp. 2d 132, 138 (D.

---

[17] State law enumerates a similarly low threshold determination. Before "supporting" an allegation, the investigator must have "reasonable cause to believe" that an incident of abuse or neglect did occur. 110 C.M.R. § 4.32(2). This is defined as "a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child has been abused or neglected." *Id.*; *see Care and Protection of Robert*, 408 Mass. at 63 ("[T]he Legislature intended 'reasonable cause' to serve a threshold function, thereby implying a relatively low degree of accuracy.").

Mass. 2003) (finding a due process violation where a DCF investigator filed a report that contained made-up facts, but declining to find a violation where another investigator failed to follow regulations but did not knowingly insert false information).

The alleged regulatory and statutory violations—while troubling—do not create a constitutional violation. *Boveri v. Town of Saugus*, 113 F.3d 4, 7, (1st Cir. 1997) ("A regulatory violation, like a violation of state law, is not inherently sufficient to support a § 1983 claim."); *Amsden v. Moran*, 904 F.2d 748, 757 (1st Cir.1990) ("Even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process."); *see Kauch*, 321 F.3d at 5 (DCF investigator's violation of department policy did not give rise to constitutional violation). The failure to provide notice or to conduct interviews, for example, do not automatically remove reasonable suspicion based on evidence that is already on the record. *Howard*, 270 F. Supp. 2d at 140 (DCF investigator's failure to conduct interviews or provide notice, in violation of regulations, did not give rise to a constitutional violation). And the alleged "falsification" of interview dates and times cannot eviscerate the content of those interviews.[18] Finally, because the determination of reasonable suspicion is an objective one, Paradis's assignment to the second investigation does not automatically impeach that determination.

Because there was enough information to justify a reasonable suspicion of child abuse, the decision to "support" the allegations of sexual abuse did not improperly interfere with plaintiff's constitutional right to the care, custody, and control of his child. Lacking this constitutional

---

[18] Although there may be a staleness issue in cases where the original interviews were conducted a significant period of time before the "support" determination, that is not the case here. The original interviews were all conducted within a week of the new entries. *Cf. Strail v. Dep't of Children, Youth, and Families*, 62 F. Supp. 2d 519, 531 (D.R.I. 1999) (three-week old information of father's drunkenness was too stale to support reasonable suspicion).

violation, the claims against all defendants must fail.[19] Accordingly, defendants' motion to dismiss will be granted as to all remaining federal claims.

### b. State Constitutional Claims

"To establish a claim under Mass. Gen. Laws ch. 12, § 11I, a plaintiff must prove a deprivation or attempted deprivation of a protected right by 'threats, intimidation, or coercion.'" *Piccone v. McClain*, 720 F. Supp. 2d 139, 146 (D. Mass. 2010) (quoting *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 395 (1996)). The complaint alleges that defendant Graham "sought to harass and intimidate Rafferty by directing Doe 5 to file the Third 51A Report." (Compl. ¶ 71).

"In general, the stated intention to bring lawful process is not coercive for purposes of Section 11I." *Piccone*, 720 F. Supp. 2d at 146 (citing *Stephens v. Exec. Office of Health and Human Servs.*, 2003 WL 1477786, at *3 (Mass. App. Ct. Mar. 24, 2003)); *see Sena v. Commonwealth*, 417 Mass. 250, 263 (1994) ("Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under § 11I."). Graham stated that DCF might file a

---

[19] As noted, there can be no violation of procedural due process where there has been no constitutional deprivation. *Pease*, 719 F. Supp. 2d at 151. However, because many of the alleged regulatory violations amount to a denial of either notice or an opportunity to be heard, (*see, e.g.*, Compl. ¶ 51) (stating that DCF failed to notify all parties that decisions were reversed), the Court briefly addresses the contours of the procedural due process right. Procedural due process requires that the affected individuals be afforded "the opportunity to be heard at a meaningful time and in a meaningful manner." *Pease*, 719 F. Supp. 2d at 151 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). Where the state provides adequate means of post-deprivation redress, a public official's actions cannot create a procedural due process violation. *Herwins v. City of Revere*, 163 F.3d 15, 19 (1st Cir. 1998) ("[T]here is no denial of procedural due process, even by the official, so long as the state provides an adequate means of redress[,] . . . . both where the official's action is negligent, and where it is deliberate."); *see Hootstein v. Collins*, 679 F. Supp. 2d 169, 181 (D. Mass. 2010). Here, a number of procedural avenues were available to plaintiff, including an appeal through the state courts, *see* Mass. Gen. Laws ch. 30A, § 14, or through DCF's fair hearing process, *see* Mass. Gen. Laws ch. 119, § 23. Plaintiff actually took advantage of the fair hearing process and eventually overturned the offending "support" determination. Under the circumstances, the procedural due process afforded to plaintiff was constitutionally adequate. *See Hootstein*, 679 F. Supp. 2d at 184 (review procedures of DCF decisions satisfied procedural due process); *Howard*, 270 F. Supp. 2d at 140 (same); *cf. Pease*, 719 F. Supp. 2d at 154 (failure of DCF to provide requested hearing violated procedural due process).

new § 51A report and conduct a conforming investigation, and later directed Doe 5 to do so. (Compl. ¶¶ 50, 52). There are no allegations that Graham's communication to plaintiff or the third investigation were conducted in an intimidating or threatening way. She and Doe 5 merely exercised their authority to follow-up on a non-conforming investigation and ensure that the allegations of abuse were adequately investigated. Under the circumstances, defendants' actions did not constitute "threats, intimidation, or coercion" and did not violate the MCRA. Accordingly, plaintiff's state claims will also be dismissed.

## IV.  Conclusion

For the foregoing reasons, defendants' motions to dismiss are GRANTED.

**So Ordered.**

                                              /s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
                                            United States District Judge

Dated: June 30, 2011